LOTT POOL *vs.* HENRY B. LLOYD & others. '

A. made a negotiable note to B., payable on demand, under an agreement that it should be placed in the hands of C. to be by him delivered to B. or returned to A., on certain conditions : B. fraudulently obtained possession of the note, and negotiated it six months after its date, and the indorsee brought a suit thereon against A., who thereupon filed a bill in equity, praying for an injunction and relief. *Held*, that the court had no jurisdiction in equity, and that A. had an adequate and complete remedy at law.

When a bill in equity seeks special and general relief, and also a discovery, and relief is the principal object, and discovery is sought merely as incidental to the relief, if the plaintiff shows no title to the relief sought, a demurrer lies to the whole bill.

THIS was a bill in equity, which set forth, in substance, the following facts : That on the 1st of June 1839, an oral agreement was made by and between the plaintiff and Henry B. Lloyd, one of the defendants, that the plaintiff should advance and lend to said Lloyd $1426.50, to enable him to carry on the business of stable keeping in Boston, and that said Lloyd should cause certain real and personal property (viz. a stable and horses, and carriages and harnesses) to be conveyed absolutely to the plaintiff, as security for the money to be advanced and lent, which property the plaintiff was to hold as security for the payment of said money and interest thereon, and upon the secret trust to reconvey the same to said Lloyd, upon such payment being made by him : That in order to secure said Lloyd's rights.

and to enable him to enforce said trust, it was further orally agreed by and between him and the plaintiff, that the plaintiff should make and sign a negotiable note for $1426.50, payable to Samuel Cheney, on demand, who was to indorse the same (without recourse) to said Lloyd, and that said note should be placed in the hands and keeping of N. P. Russell, to hold in trust to deliver the same to the plaintiff upon said Lloyd's repaying said money, agreed to be advanced and lent as aforesaid, with interest thereon, and upon the plaintiff's thereupon conveying and transferring said real and personal property to said Lloyd ; or to deliver said note to said Lloyd, upon the plaintiff's failing to reconvey said property to him, upon his tender to the plaintiff of said money and interest thereon :  That it was further agreed, that the plaintiff should appoint said Lloyd and Alexis Pool his joint attorneys and agents (the said Lloyd and Alexis having agreed to become partners in the business of stable keeping) to hold and manage the property aforesaid, upon their own risk and responsibility, and for their own profit ; the plaintiff to retain no interest in said business beyond the payment of the interest upon said sum of $1426.50 :  That on or about said 1st of June, Lloyd caused the property aforesaid to be conveyed to the plaintiff according to said agreement, and the plaintiff advanced and paid to Lloyd said sum of $1426.50 ; appointed Lloyd and Alexis Pool his joint attorneys and agents ; made and signed his promissory note for $1426.50, payable to said Samuel Cheney, or order, on demand, which note was indorsed in blank by said Cheney, and without recourse, and was placed and left in the hands of the counsel, who drew the conveyances of said property, to be by him delivered to said N. P. Russell, whenever said Russell's consent to hold the same, on the trusts aforesaid, should be obtained ; upon the express agreement that said note was in no way to be used or negotiated by said Lloyd or by any one else, until the plaintiff should fail to perform the stipulations aforesaid, upon which said property was transferred to him :  That said Lloyd afterwards, without the consent or knowledge of the plaintiff, called upon the counsel, in whose hands said note then was, and stated to him that

the plaintiff had authorized and sent said Lloyd to obtain the note and place it in the hands of said Russell ; and that said counsel was induced, by such false and fraudulent representation, to deliver the note to Lloyd, and did deliver it to him, who, on the 27th of December 1839, sold, assigned and transferred the same to Robert Vinal and William Blanchard junior, (the two other defendants,) partners in business, in payment of a debt due from him to them, and for which the plaintiff was in no way responsible : That said Vinal and Blanchard were afterwards advised and informed of the foregoing matters, and particularly of the false and fraudulent manner in which said Lloyd procured said note, but that they nevertheless, on the day last mentioned, demanded payment of the note from the plaintiff, and on his refusal to pay it, they commenced a suit at law against him for a small sum due from him to them, and which he was always willing and ready to pay, and also to recover the amount of said note — which suit is still pending.

The plaintiff further averred, that the facts above set forth were material in the defence of said suit of Vinal and Blanchard against him, and that a discovery of them by the defendants was requisite to such defence, and that they could not be proved by other testimony. He therefore prayed that the three defendants might, upon their oaths, make full answers to all and singular the matters above set forth and charged, and to divers specific interrogatories inserted in the bill.

The plaintiff also prayed that an injunction might issue, restraining said Vinal and Blanchard from further prosecuting their suit aforesaid for the recovery of the amount of said note ; and that they might be ordered to give up said note to the plaintiff. The bill concluded with a prayer for such other and further relief as might to the court seem to be according to equity and good conscience.

The defendants demurred to the bill, and assigned, among other causes of demurrer, *first*, want of jurisdiction, and *secondly*, want of equity.

*B. Rand*, in support of the demurrer.

*S. D. Parker*, for the plaintiff.

SHAW, C. J. 1. The court are of opinion, that they have no jurisdiction, and that, upon that ground, the demurrer must be sustained. Though the equity jurisdiction of the court has been from time to time enlarged, it is still limited to particular subjects, and none of them are such as to embrace the plaintiff's case. It is said, that it is included under the head of equity, where goods, chattels, bonds, notes and the like, are taken, detained and secreted, so that they cannot be come at to be replevied. *St.* 1823, *c.* 140, § 1. Rev. Sts. *c.* 81, § 8, clause 4th. This manifestly extends to such notes as the plaintiff might main tain an action at law to recover, if they could be found so as to be replevied. The revised statutes are explicit, in describing them as taken and detained from the owner thereof. But in this case, the plaintiff can claim no property in the note, as a contract. Indeed the gravamen of his complaint is, that it is not in the hands of the depositary agreed upon by the parties. Nor does he aver, that he has performed the conditions on which it was to be held by such depositary and delivered back to him.

It is then said that the case comes under that head, which gives jurisdiction in equity, when there are more than two parties, having distinct rights or interests, which cannot be justly and definitively decided in one action. Rev. Sts. *c.* 81, § 8, clause 6th. But here are no such three or more parties, having distinct rights or interests. The defendants, Vinal and Blanchard, claim the note as indorsees of Lloyd; but Lloyd does not claim any interest in the note adversely to them. This clause in the statute manifestly applies to the case of more than two parties having such distinct interests, that a judgment between two of them would leave one or both open to a controversy with a third party; a case requiring proceedings in the nature of a bill of interpleader, where one decree would adjust the whole matter of controversy.

It was suggested, though apparently not much relied on, that here was a trust disclosed, upon which the court has jurisdiction. It is difficult to perceive how any trust exists, even as between the defendant Lloyd and the plaintiff. The only plausible ground is, that Lloyd obtained the note of the plaintiff's agent, for a

special purpose, and was therefore bound in conscience to hold it for the plaintiff's use     But by the statement in the bill, the counsel, with whom the note was left, had no authority to deliver it, and in doing so, was not the plaintiff's agent.   And further ; it is not from Lloyd, but from the defendants, Vinal and Blanchard, as indorsees and holders of the note, that the plaintiff seeks relief ; and between them and the plaintiff there is no trust.

2. But upon another ground of demurrer, want of equity, we are of opinion, that this suit cannot be maintained.   By the facts stated in the bill, the plaintiff has a perfect defence at law. The note was never delivered by him or by his authority, but obtained by misrepresentation, and fraudulently negotiated.   Being a note payable on demand, made after *St.* 1839, *c.* 121, § 1, went into operation, any matter, which would be a good defence to a suit brought by the promisee, would be a good defence to a suit by the indorsee.   Besides ; the bill alleges that it was negotiated to the plaintiffs on the 27th of December 1839, at which time it must be regarded, upon general principles of law, independently of the statute, as a dishonored, overdue note, and taken by the indorsees subject to any defence, which might have been made to it, had the suit been commenced by their immediate indorser.   The plaintiff, therefore, has a plain, adequate and complete remedy at law.

As the bill at present stands, special and general relief is sought, where relief is the principal object, and discovery is sought merely as incidental to such relief.   In such case, if the plaintiff shows no title to the relief sought,  a demurrer to the whole bill will lie.   Mitf. Pl. (3d ed.) 149, 150.   Beames Eq. Pl. 250. If the plaintiff seeks a discovery, merely in aid of his defence to a suit, commenced or threatened, he must shape his bill accordingly, either by the commencement of a new suit, or by amending his present bill, which can be done only on terms.