Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 This is an appeal from the Circuit Court of the District of Columbia, and County of Alexandria.
 

 
 *178
 
 The bill was filed by the administrator of Thomas H. McClanahan against the defendants, to obtain possession of Lavinia, a slave, together with three children, Betsey, Polly, and Maria, and several grandchildren, which had been bequeathed by Elizabeth Edwards
 
 to
 
 Sarah Nutt, her daughter, for life, and after her deceasé to Elizabeth F. Nutt, a granddaughter, the wife of the complainant’s intestate. Elizabeth, the granddaughter, died, leaving the intestate, her husband, surviving, who died also, leaving Sarah, the life-tenant, surviving. The latter died in 1840.
 

 The complainant took out letters of administration on the estate of the husband, September 9, 1839, and afterwards upon the estate of Elizabeth, the wife, on the 9th of November, 1840, and filed this bill in April, 1845, claiming that the property and right to the possession of the slaves bequeathed to the wife in remainder became complete in him, as the representative of the estate of the husband, on the death of the life-tenant.
 

 The deféndants demurred to the bill, and several grounds of Ejection have been taken under the demurrer.
 

 T. That there is no averment that the executors of Mrs. •Edwards assented to the legacy to the granddaughter, so as to vest the property in the legatee, and enable the personal representative to bring the suit. Hairston
 
 v.
 
 Hall, 1 Call,
 
 188;
 
 Smith and Wife
 
 v.
 
 Towne’s Administrator, 4 Munf. 191.
 

 The whole of the personal estate of the testator devolves upon the executor; and it is his duty to apply it, in the first place, to the payment of the debts of the deceased; and he is responsible to the creditors for the satisfaction of their demands to the extent of the whole estate, without regard to the testator’s having, by the will, directed that a portion of it shall be applied to other purposes. Hence the necessity that the
 
 legatee,
 
 whether general or specific, and whether of chattels real or personal, must first obtain the executor’s assent to the legacy before his title can become perfect. He has no authority to take possession of the legacy without such assent, although the testator by the will expressly direct that he shall do so; for, if this were permitted, a testator might appoint all his effects to be thus taken, in fraud of his creditors. 2 Williams on Executors, p. 843, ch. 4, § 3, and cases there cited.
 

 •But the law has prescribed no particular form by which the assent of the executor shall be given, and it may be, therefore, either express or implied. It may be inferred from indirect expressions or particular
 
 acts;
 
 and such constructive permission shall be equally available. An assent to the interest of the tenant for life in a chattel will inure to vest the interest of the
 
 *179
 
 remainder, and e converso, as both constitute but one estate. So an assent to a bequest of a lease for years carries with it an assent to a condition or contingency annexed to it; and it may be implied from the possession of the subject bequeathed by the legatee for any considerable length of time. Ibid., p. 847, and cases.
 

 The bill, in this case, contains an averment of the possession of the subject of the legacy by the life-tenant, in pursuance of the bequest in the will, and which is admitted by the demurrer; and, upon the principles above stated, lays a sufficient foundation for the presumption, that the possession was taken with the assent of the exeeutors, — a presumption of law from the facts admitted, and 'which assent inured to the benefit of the remainder-man. This ground of objection is not, therefore, well taken.
 

 2. The next objection is, that the complainant has shown no title to the slaves in question, upon the face of the bill.
 

 Because the interest in the remainder did not vest in the intestate, the husband, before his death, so as to make the property a part of the assets of his estate, to be administered upon by his personal representative. He survived Elizabeth, his wife, the legatee in remainder, but died before the life-tenant, and therefore had not, and could not have, reduced the subject of the legacy into possession in his lifetime.
 

 This question is to be determined upon the laws of the State of Virginia; and, on looking into the course of the decisions of the courts in that State, it will be found that the interest of the husband in the wife’s remainder of this species of property is placed upon the footing of an interest in a chose in action of the wife, which vests in the husband, if he survives, subject to be reduced to possession by him, if living at the termination of the life estate, and if not, by his legal representative, as a part of his personal estate. Dade
 
 v.
 
 Alexander, 1 Wash. 30; Wallace et ux.
 
 v.
 
 Taliaferro et ux., 2 Call, 447, 470, 471, 490; Upshaw
 
 v.
 
 Upshaw et al., 2 Hen. & Munf. 381, 389; Hendren
 
 v.
 
 Colgin, 4 Munf. 231, 234, 235; Wade
 
 v.
 
 Boxley, &c., 5 Leigh, 442.
 

 In a very early case in the Court of Appeals, Dade
 
 v.
 
 Alexander, decided in 1791, it was resolved, a feme sole being entitled to slaves in remainder or reversion, and afterwards marrying, and dying before the determination of the particular estate, the right vests in the husband. The President (Pendleton) stated, that this was the constant decision of the old General Court from the year 1653 to the Revolution, and has since been confirmed in 'this court, in the cases of Sneed
 
 v.
 
 Drum
 
 *180
 
 mond, and Hord
 
 v.
 
 Upshaw, and that it had become a fixed and settled rule of property. The case of Wade
 
 v.
 
 Boxley, &c., decided in 1834, affirmed the same principle. There the. question was between the surviving husband and the children of. the deceased wife, as to the slaves in remaindér, the wife having died before the life-tenant. The court held the wife took a vested remainder in the slaves, which at her death devolved to her husband, and not to the children.
 

 There is some question in the books whether the husband can bring a suit in his own name, or, in case of his death, a suit can be brought in the name of his personal representative, to reduce to possession this species of property after the termination of the life.interest; or whether he or the personal representative, as the case may be, is not bound to take out letters of administration-upon the estate of the wife, and bring the action as such administrator.
 

 That the husband, and, in case of his death, his personal representative, are entitled to administration in preference to the next .of kin to the wife, was expressly ’decided in the case of Hendren
 
 v.
 
 Colgin, already referred to.
 

 In the case of Chichester’s Exec.
 
 v.
 
 Vass’s Adm’r, 1 Munf. 98, Judge Tucker expressed the opinion, that, in equity, letters of administration upon the estate of the wife were unnecessary; and he referred to several authorities in England, in support of the position, and especially the case of Elliot
 
 v.
 
 Collier, 3 Atk. 528; S. C., 1 Wils. 168; S. C., 1 Vern. 15. See also Squib
 
 v.
 
 Wyn, 1 P. Wms. 378, 380, 381; Harg. note to Co. Lit. 351; Whitaker
 
 v.
 
 Whitaker, 6 Johns. 112, 117, 118.
 

 The cases of Dade
 
 v.
 
 Alexander, Robinson
 
 v.
 
 Brock, Drummond
 
 v.
 
 Sneed, and Wade
 
 v.
 
 Boxley, &c., already referred to, are cases in which the administration on the wife’s estate seems to have been dispensed with.
 

 The usual’ course, however, is to take out letters; though it is difficult to assign a reason for the requirement; except, perhaps, to give the creditors of the wife a remedy, as the surviving husband is liable for her debts in .this representative character to the extent of her assets. (Heard
 
 v.
 
 Stamford, Cases Temp. Talb. 173; 3 P. Wms. 409; 2 Williams on Executors, 1083, 1084; Gregory
 
 v.
 
 Lockyer, 6 Mad. 90. ) These are limited to her personal estate, which continued in action,' and unrecovered at her death. Beyond this he is not responsible, after her decease, no matter what may have been the estate received by her. (2 Williams on Executors, 1084; Went. Off. Executors, 369; and cases before cited.)
 

 In this case the complainant took out letters'of administration
 
 *181
 
 upon the estate of Elizabeth, the wife, which are referred to in the bill, as well as the letters upon the estate of the husband but there is no averment of a claim to the possession of the slaves in that right, the claim being placed exclusively upon his right as administrator of the husband. The bill is, probably, defective for want of this averment; but as it is defective upon another ground, which we shall presently state, it is unnecessary to express a definitive opinion upon this one.
 

 The will of Elizabeth Edwards bequeathed to Sarah Nutt, her daughter, the slave Lavinia, together with her future increase, during her life, and, at her death, to Elizabeth, the granddaughter, the' wife of the intestate, and to her heirs for ever.. And the daughter, before ¡the termination of the life estate, and after the slave came into her possession, sold her to one Nicholas F. Blacklock, residing in the city of Alexandria, since deceased, leaving a widow and three children. These children and the husband of one of the daughters are made defendants, and also the husband of the only living child of George Coleman, who, it is charged, purchased Betsey, one of the children of Lavinia, and William D. Nutt, his- administrator. These comprise all the defendants.
 

 The bill prays that the defendants may be decreed- to make restitution of the slave Lavinia, her children, and grandchildren, and also to make compensation for the services of the same since the right of the intestate accrued ; and, further, that they discover the numbers and names of the children and grandchildren, and the person or persons- in whose possession they are, or who own or claim them, or either of them;- and also various other facts and circumstances tending to establish the title of the complainant to Lavinia, and her increase, which it is not material further* to notice.
 

 The ground of objection upon the demurrer, in this part of the case, is, that there is no direct or positive averment in the bill.that the defendants, or either of them, have any interest in the slaves in question, or that the slaves themselves-are in their possession, or under their control;, or in the possession or under the control of either of them; and which ground of' objection, we are of opinion, is well taken, and fatal to the relief prayed for.
 

 There is not only no direct averment of possession or control, but the contrary appears upon the face of the bill. It is charged that Lavinia and her daughter Maria reside in the town of Alexandria, and go out to service, accounting therefor to the family of Nicholas F. Blacklock, for and in behalf of the widow, who is not a party to the bill; that Polly and her children
 
 *182
 
 reside in the city of Washington, with persons unknown; and that Betsey and her children are either in the actual possession of Richard Davis, the husband of the daughter of George Coleman, deceased, or under the control of William D. Nutt, his administrator.
 

 Possession is thus shown to be out of the defendants, with the exception of Betsey and her children, who are stated, as we have seen, to be either in the possession of Davis, or under the' control of Nutt.
 

 It is apparent, therefore, upon the face of the bill, that the complainant has set forth no title t,o relief against these defendants, or either of them, whatever may be the right which he has shown to the slaves themselves; as it is not averred that they or either of them have any interest in the slaves, the subject-matter of the suit, or that they are in any way liable to-account to him, for the same, or chargeable for their services.
 

 The purchase of Lavinia, by Blacklock, of the life-tenant, was lawful, and vested in him the title and right to her service and increase, until the termination of that estate, in 1840. The sale by him of Betsey to Coleman was also lawful; and whether or not the others continued in the family and belonged to him at his decease, and passed to the widow and children, as part of his estate, is nowhere stated in the bill.
 

 There is no averment that the children, who are made defendants, took any interest in them at his decease, as his heirs, next of kin, or legatees ; and, as we have already stated, not even so much as possession. The only allegation in this respect is, “ that, since the sale to Blacklock by Mrs. Nutt, the said Lavinia has had a numerous increase, to wit, children and grandchildren, most of whom have been sold, or otherwise disposed of, as your orator is informed, and believes; and that some of them are now going at large, or are in the possession of the family of the said Blacklock ”; but in the possession of what members of the family, or whether in the possession of any of those who are made defendants, are matters left altogether to conjecture and surmise.
 

 The same vagueness and uncertainty exist in respect to the charges against the other defendants.
 

 There is no averment that Betsey and her children belonged to Coleman at his decease, and passed to his widow and children, or that they had any interest in the same, the only allegation, in this respect, being, that they are said to be in the possession of Davis, the son-in-law, or under the control of Nutt, the administrator.
 

 The radical vice in the bill is, that no case is made out
 
 *183
 
 against these defendants, or either of them, —no foundation laid creating a liability, legal or equitable, to deliver the slaves to the complainant, or to account for their value or services; they seem to have been made -parties, one and all, as witnesses to establish a supposed right of the intestate to the property, under the idea that, from their connection with the families of the former owners of the life interest, they might be able to give some information on the subject. (Story’s Eq. Pl., 234, 244, 245, 510, 519; Cooper’s Pl. 41, 42; 2 Johns. Ch. 413.)
 

 There are other objections taken' to the relief sought in this form, which are worthy of consideration; but as the ground above stated disposes of the case, it is not important that we should examine them.
 

 The complainant having, in our judgment, failed to set forth any foundation for relief, the right to the discovery, which is claimed as incidental, of course fails with it. (Story’s Eq. Pl., §, 312 and note; 17 Maine, 404; 3 Edw. 107; 3 Beav. 284.)
 

 The decree below must be affirmed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Alexandria, and was argued by counsel; on consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the. said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.